Joseph A. Di Filippo, Respondent, *v.* Louis Gargiulo, Appellant, et al., Defendants.

First Department, April 24, 1951.

*Charles C. Weinstein* for appellant.

*Charles H. Tuttle* of counsel (*Millard E. Theodore*, attorney), for respondent.

Dore, J. Defendant appeals from a judgment of $164,485 entered against him in plaintiff's favor by a private Referee appointed by Special Term to hear and determine the issues on defendant's accounting to plaintiff, an assignee, in connection with the management of an Italian-American restaurant in Coney Island from 1935 to 1948. After two days' trial at Special Term, the parties stipulated to discontinue the action against all defendants except Louis Gargiulo (hereinafter " defendant "), to eliminate from the complaint all allegations of conspiracy and fraud alleged to have been committed by defendants and to consent to an interlocutory judgment directing defendant to account for his acts in connection with the management of the restaurant and providing for appointment of a referee to take the account. These stipulations were incorporated in the interlocutory judgment which, in addition, provided for the appointment of a named nonofficial Referee and

fixed specific dates for the accounting; viz., from January 1, 1935 to February 1, 1948; at the hearings, the latter date was by consent made December 31, 1947.

Defendant filed an accounting from April 1, 1938 to and including December 31, 1947, during which period the restaurant operated as a corporation; but filed no accounting for the previous period from January 1, 1935 to April 1, 1938. Covering the period accounted for, defendant produced corporate books, checks, bank transcripts, income tax returns, etc.— a very large amount of documentary evidence by stipulation not printed in this voluminous record.

After unduly protracted hearings during a period of almost a year, the Referee in a decision based on circumstantial evidence and what he said was defendant's utter lack of credibility, held that defendant had misappropriated for his own use without the knowledge and consent of his brother and sisters, who worked with him in the restaurant, large sums of money from the restaurant receipts; he determined the amount of the sums allegedly misappropriated on the basis of the opinion of a claimed expert, an accountant with clients in the restaurant business, and fixed the surcharge in the precise sum claimed by such accountant in one part of an elaborate memorandum submitted by plaintiff after the hearings had been finally closed. That sum was $123,672.83 which with interest and costs constitutes the judgment appealed from by defendant. At trial, the parties stipulated that the Referee's fee and the expenses for stenographic services should be paid by the losing party. This court stayed, without bond, enforcement of the judgment pending this appeal.

Plaintiff is assignee of defendant's brother Constantino (hereinafter "Constantino") who with defendant and two sisters each owned 25% of the stock of the restaurant corporation during the period of the filed accounting. The judgment directed is, accordingly, only one fourth of the purported misappropriations found by the Referee; and if his calculations based on an expert's opinion are sustained, the total alleged misappropriations in this Coney Island restaurant for the period in question would be about a half million dollars.

The Referee's measure of damages based on the opinion evidence of one of plaintiff's accountants is erroneous. The accountant, over objection, answered a hypothetical question stating that he could give his opinion of the ratio, in a restaurant such as the one in question, between the cost of food sold to sales of food and also the cost of wines and liquors to the sales

of wines and liquors, and proceeded also, over objection, to give such opinion in specific percentages for each of the years in question. On cross-examination, he said his figures were based upon his experience, and work sheets and certain files in his possession none of which were in evidence. His opinion ratio was applied to the cost of food and wine as entered on the books for the purpose of determining so-called " actual " sales, and from such supposed " actual sales " there was deducted the amount of food and wine sales as shown in the corporation's books of account and the difference between the two amounts was supposed to represent the " net income from sale " of food or wines " not recorded ". The so-called " actual " food sales for the years 1945, 1946 and 1947 were determined on a different basis on a formula that, in addition, arrived at a new supposed cost of food for those years and on this calculation the so-called " unreported " sales so computed exceeded $300,000 in such years. The witness did not know how many employees were in the restaurant for any of the years in question all of whom, together with all members of the family (about twelve adults and children), ate in the restaurant regularly. He had not been personally engaged in the restaurant business since 1928 or 1929. He had never been in the restaurant in question except once and that was a few weeks before the hearing, yet he purported to give his opinion as to the average food check for each customer during the period and stated such average in dollars and cents per person for food only excluding drinks. He also said that the level of restaurant prices in 1947, 1948 and 1950 was 10% higher than during 1944, 1945 and 1946, the period of the Office of Price Administration (OPA) regulation of the restaurant industry. The proof showed, however, that during the OPA period, in order to get the largest possible ration allowance, " meals " included anything from a cup of coffee up, and documentary evidence established an increase in the number of " meals " in that period. Documentary proof also showed that the prices in May, 1950, were between 50 and 100% higher than the OPA prices. Yet the Referee accepted in dollars and cents all of this testimony including the precise amount of the surcharge on one of the expert's so-called bases for " assessing damages ".

We think there are too many elements of uncertainty in this testimony to make a sound basis of surcharge herein; that no proper foundation was laid; and that the witness was not proved to be properly qualified. He was an accountant, not an expert

actually engaged in the restaurant business. An expert may give his opinion but it must be based on facts in evidence or facts properly assumed. The judgment against defendant essentially is based upon this witness' testimony which in turn is based upon unsupported assumptions and opinions, or matters not in evidence and gives no rational basis for this large judgment against defendant.

But that is not all. The procedure was also erroneous. If plaintiff, on the claimed expert's testimony, intended to offer elaborate mathematical calculations as the basis for computing the precise amount of the surcharge, such calculations should have been offered during the trial as exhibits so that, if received, the witness would be subject to cross-examination thereon. Instead, the elaborate claimed bases for surcharge with long mathematical calculations annexed thereto were not offered as an exhibit during trial but appear for the first time in the form of a memorandum or brief submitted after the entire case had been closed.

Except for the first objection on the failure to file any account from January 1, 1935 to March 31, 1938 and the second objection (which latter was withdrawn), none of plaintiff's objections to defendant's account specified any item or items in the account, but amount to general statements in conclusory form that defendant had not properly accounted. Under rule 174 of the Rules of Civil Practice, specifically relating to references on accountings, the procedure was erroneous. The interlocutory judgment provided that after defendant filed the account, if plaintiff filed objections '' then the account shall be taken and stated '' by the named Referee. Rule 174 provides that all parties accounting before a referee shall bring in their accounts in the form of debtor and creditor verified by the accounting party; that the referee shall fix a time for the filing, on notice, of objections to the accounting; that the '' contest of the account shall be confined to the items or matters to which objections have been filed ''; and that any party filing an objection '' shall be permitted to examine the accounting party with reference thereto.'' Plaintiff's general conclusory objections did not raise such issues and the Referee tried the case as if it were an action for damages for fraud.

In *Adelson* v. *Dreyman* (274 App. Div. 605, 608, 611) an interlocutory judgment on consent had been entered, as in this case, directing defendants therein to account, but the private referee appointed had tried the action as if it were an action for fraud

and breach of fiduciary duty; this court held that the referee went beyond the scope of the pleadings and reversed the judgment and sent the matter back for retrial before an official referee. In the case before us, by stipulation of all parties, all issues of fraud had been expressly eliminated, yet the Referee based his rulings expressly and exclusively on fraud and what he called " embezzlement ". Defendant here, as in the *Adelson* case, can be held liable for failure to account for moneys received and not used for joint venture purposes; but the Referee misconstrued the effect of the interlocutory judgment and went beyond the scope of the pleadings. He was not appointed to try an action for damage based on fraud as if no judgment had been already entered. He was appointed to take and state defendant's account and try any issues incidental to the accounting and this was the extent of the relief that could be afforded.

Our appraisal of defendant's testimony with its supporting documentary evidence does not coincide with the extreme conclusions on defendant's credibility reached by the Referee. The evidence establishes that this restaurant was run for years as a family enterprise; the whole family ate in the restaurant including Constantino, the assignor of this cause of action, and his eight children; they all had rent, food, electricity and gas supplied from the restaurant and evidently had a very loose way of handling cash. One of the cash registers was in the kitchen from 1938 to 1947 and concededly defendant was the outside man who met the guests in the restaurant; other members of the family used the kitchen register, on which meals taken out were rung up without a waiter's slip and, accordingly, receipts did not coincide. This way of doing business was doubtless acquiesced in for years by all four members of the family who remained working in the restaurant after the son John left in 1936. In the light of the way the restaurant was run, that the bank deposits exceeded receipts recorded in the books is not extraordinary. We think the Referee failed to give proper credit to defendant's documentary evidence including books, checks, notes, transcripts of bank accounts, etc., explaining, although a period of many years had elapsed, many apparent discrepancies.

Plaintiff seeking surcharge should have adopted and presented to the court a proper, rational method or basis for ascertaining with reasonable certainty the amounts, if any, defendant received from the joint enterprise and did not account for. In its genesis, amount and connotations, the judgment appealed

from is unsupportable in law or in fact and must be reversed, and a new hearing ordered before an official referee to be appointed by this court. The present record as well as the voluminous exhibits admitted in evidence herein may be offered as exhibits to avoid further unnecessary delay and expense. Especially now after this prolonged trial, plaintiff should be compelled to file specific objections to defendant's accounting, a notice of which must be served on defendant, and the contest of the accounting should be confined to the items or matters to which such objections have been filed as provided in rule 174 of the Rules of Civil Practice.

Appellant earnestly contends that the judgment must be reversed and the complaint dismissed as a matter of law because not even the consent of the parties can allow this plaintiff, assignee of an individual stockholder owning 25% of the stock of a restaurant corporation, to recover *in his own right* a judgment for $164,485 for alleged misappropriations of *corporate* funds. The alleged wrongdoer owns 25% of the stock. If this point is well taken, the judgment would have to be reversed and the complaint dismissed on that basis alone for the accounting filed from April, 1938, to December, 1947, the period of the corporation. But by stipulation and consent interlocutory decree, defendant as an individual agreed to account to this plaintiff. The minutes of the two-day trial at Special Term are not before us on this appeal but, by stipulation, the action was discontinued against all the other parties, including the corporation, except defendant. Defendant did not raise this point either before Special Term or during the long reference. On this record, therefore, we may not at this time relieve defendant of the stipulation (*Sickels* v. *Morton,* 8 N. Y. St. Rep. 433 [1st Dept., General Term]; *Lowendahl* v. *Baltimore & Ohio R. R. Co.,* 247 App. Div. 144, 147, 148).

By the terms of the interlocutory judgment, defendant was required to account from January 1, 1935. While this date was not in the stipulation, and the ten-year Statute of Limitations would have been a complete defense, and it is rare that one in an enterprise of this sort keeps records going back for upwards of thirteen years,— nevertheless defendant made no move to amend the interlocutory judgment which on its face states that it was entered on consent in open court. Accordingly, on this appeal we may not relieve defendant of the consent obligation to account under the terms of the interlocutory judgment from January 1, 1935.

The judgment appealed from should be reversed upon questions of fact and of law, the private reference discharged and the matter remitted to an official referee to be appointed by this court, with costs to appellant to abide the result of final judgment in the action.

PECK, P. J., GLENNON, COHN and CALLAHAN, JJ., concur.

Judgment unanimously reversed, the private reference discharged and the matter remitted to an official referee to be appointed by this court, with costs to the appellant to abide the result of the final judgment in the action. Settle order on notice.