MILTON REIN et al., Copartners Doing Business as FRIENDLY SERVICE STATION, Respondents, v. TERRY MOTTOLA et al., Appellants.

First Department, June 10, 1958.

*Daniel J. Pinsky* for appellants.

*Raphael H. Weissman* of counsel (*Abram Shlefstein* with him on the brief; *Raphael H. Weissman,* attorney), for respondents.

BERGAN, J. We examine on this appeal the weight to be given the opinion of an expert on value of a leasehold. The problem is complicated on one side by the influence of elusive and erratic competitive elements; and on the other by the failure of the expert to make use of significant definitive data to the extent it was available to him.

Plaintiffs in May of 1955 bought from the defendants a gasoline station on the Boston Post Road in The Bronx. The price was $44,000 of which $41,000 was allocated without further segregation to " leasehold and goodwill " and the rest for furniture, fixtures and equipment. Defendants covenanted that they would not open, or directly or indirectly become interested in, any business similar to the one they were selling " within a radius of one mile " for 10 years.

Three months later defendants acquired another site on Boston Post Road on which they erected a gasoline station which they opened for business in April, 1957. The site was almost a mile away from the station they had sold; but on the basis of precise measurements it was demonstrated that it was 348 feet on a straight line within the " radius of one mile " described in the restrictive covenant.

Plaintiffs then instituted this action for an injunction in restraint of violation of the restrictive covenant; the court held upon a sufficient record that the covenant had been violated; but in lieu of granting injunctive relief decided to award damages to plaintiffs and granted judgment in the sum of $7,500. The factual foundation on which the quantum of the damage is placed creates the problem.

Proof of damage depends in this record entirely on the opinion of a witness who described himself as "real estate broker, operator and builder of garages and gas stations". He expressed the opinion that by virtue of the defendants' breach of restrictive covenant the value of the plaintiffs' gas station had been diminished by $10,000 to $12,000; or by about a quarter of the entire purchase price paid by the plaintiffs.

The business and experience of the expert witness carried with them sufficient tokens of qualification to permit him, prima facie, to state an opinion of the value of the leasehold and of factors which might logically be expected to affect its value. But in this case it was established that there were 10 other gasoline stations between the plaintiffs' station and that of the defendants on the Boston Post Road; that the 2 stations here involved sold different brands of gasoline; that they were on different sides of the street; that there were a number of stations on the Boston Post Road in the opposite direction within a mile radius of the plaintiffs' station; that there were other stations, some of them new ones, constructed after the purchase in May, 1955, and one selling the same type of gasoline, within the one-mile radius of the plaintiffs' site in other streets.

These factors of location, of number and type of competitiors, and of currents of change in competition add greatly to the already complex problem of attributing actual, and not-fanciful, loss to the value of plaintiffs' enterprise by bringing into the competitive area one more station in violation of a restrictive covenant.

The breach of this covenant may have had some actual adverse consequence upon the value of plaintiffs' business; but it is a consequence very difficult to appraise; one which requires the careful and accurate utilization of such data as may be available to an expert witness. The court will receive expert advice in this area with some reservation and require that it be attuned to actualities and not permitted to rest on broad generalizations.

The witness made no attempt to tie in the opening and operation of the defendants' station with any actual change in the business experience of plaintiffs. The effect on plaintiffs' business was not reflected in his expert opinion. He testified " I was not notified about the damages * * * I don't know anything about the operation ", and that he was not "interested " in the income.

The plaintiffs' sales of gasoline were shown in the record to have been decreasing for some time before defendants' station was opened; there is no showing of a drop in gasoline sales

which in point of time may reasonably be related to the opening of defendants' station; and while there is proof of a drop in car washing operations at about the time of the opening of the defendants' station, there is proof that an automatic car washer business had opened next door to defendants' station and that defendants' business from this source was inconsequential.

None of this was considered by the expert witness. The basis for his statement there had been a $10,000 to $12,000 depreciation in the value of plaintiffs' station was the speculative conception that he felt defendants knew " the trade " and were " bound " to get " some of the old customers ", and that a new station " a very good station; a modern station " has a " tendency " to " draw trade away from the other station ".

The opinion of the expert was thus left unrelated to the economic and competitive factors of this case. No doubt damage may result to a business without actual depreciation in sales at a given time; but the expert witness must have something more than a rationalization upon a generality in order to give aid to a court in fixing damage. If, as the court held, an injunction is not to be granted and damage is to be allowed instead, the damage must be measured by the usual standard of economic loss.

The basic rules which govern expert testimony in such an area as this is are fairly well settled and understood. The " facts upon which the opinion of the witness is founded must be laid before the trial court " (*Weibert* v. *Hanan*, 202 N. Y. 328, 331). In *New York Canners* v. *Milbourne* (247 N. Y. 460) an expert had testified to weather conditions in the western and northwestern portions of the country as having affected a shipment of goods. Its reception was error, the court held, because " It was not based upon actual knowledge of witnesses but upon probabilities and upon the witnesses' general understanding of usual weather conditions " (p. 464).

A judgment, regarded as having rested on an expert witness' " unsupported assumptions and opinions, or matters not in evidence " was reversed by this court in *Di Filippo* v. *Gargiulo* (278 App. Div. 172, 176) where an accountant with clients in the restaurant business gave an opinion based on a hypothesis and his experience of ratios between costs and sales in a restaurant business. There were, the court said (p. 175): " too many elements of uncertainty " in all this. See, further, *Berla* v. *Zambetti* (235 App. Div. 464, 466); *Shewan* v. *Sparks* (208 App. Div. 397, 401). The general rule has been stated to be that " The facts upon which an opinion as to damages is based must

be shown so far as this is possible." (32 C. J. S., Evidence, § 447, p. 79.)

We do not hold that damage in the case is not possible of proof; we hold merely that in this area of complex and numerous competitive and economic factors the actual basis of the opinion related to the enterprises involved should be demonstrated to the extent demonstration is possible.

The judgment fixing damage should be reversed on the law and the facts and a new trial ordered on the issue of damage only, with costs to appellants to abide the event.

BOTEIN, P. J., BREITEL, RABIN and STEVENS, JJ., concur.

Judgment unanimously reversed upon the law and the facts, and judgment is directed in favor of the plaintiffs, and a new trial ordered on the issue of damages only, with costs to the appellant to abide the event. [See republished decision, *post*, p. 793.]